UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| JOHN McNICHOL | : | |
|     Debtor | : | Bankruptcy No. 05-17570bif |
| KENNETH FAY | : | |
|     Plaintiff | : | |
| v. | : | |
| JOHN McNICHOL | : | |
|     Defendant | : | Adversary No. 06-0289 |

..................................................

MEMORANDUM

..................................................

Mr. Kenneth Fay, who holds a state-court judgment against the debtor, commenced an adversary proceeding seeking a determination that his judgment claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The debtor filed an answer in opposition to such a determination. A one-day trial took place where the parties offered two very different versions of events.[1] Essentially, the plaintiff asserts that he was beaten by employees of the debtor with the debtor's knowledge and implicit consent. The debtor counters that the plaintiff was not beaten by his employees, and that he never saw the plaintiff on the evening when the incident allegedly occurred—and so could not have authorized it.

---

[1] The trial was postponed a number of times at the request of the plaintiff and with the consent of the defendant.

I make the following findings of fact.

I.

1. The debtor, John McNichol, Jr., in October 1999, was a co-owner of a public tavern known as Pickle's Place. N.T. at 9:46.[2] The other co-owner was the debtor's son, John McNichol, III. Ex. P-C (T13, at 120).[3] The tavern was located on MacDade Boulevard in Milmont Part, Pennsylvania.[4]

2. On October 15, 1999, the plaintiff, Mr. Fay, was a customer in that tavern. N.T. at 9:46, 10:04.

3. Mr. Fay brought suit against the debtor and Pickles Place, Inc. in the Pennsylvania Court of Common Pleas, Delaware County, asserting that the defendants' negligence resulted in plaintiff's injury. Ex. P-A.

4. This state court action was tried before a jury on December 13th and 14th, 2004. On December 14, 2004, the jury answered four interrogatories posed to it as follows:

---

[2]Reference to the notes of testimony ("N.T.") shall refer to the time of day that such testimony was provided as recorded on an audio disc. No party ordered a written transcript.

[3]Ex. P-C comprises two transcripts of the state court trial involving the plaintiff and defendant. The majority of the trial testimony occurred on December 13, 2004. The jury verdict occurred on December 14, 2004, which resulted in the judgment against the debtor. The transcripts will be denoted as T13 and T14. The parties stipulated to the admission of this exhibit.

[4]It is possible that the joint ownership of the tavern was in the form of shares of a closely held corporation known as Pickles Place, Inc. Ex. P-C (T13 at 98). For purposes of this proceeding, the debtor acknowledged that he was a co-owner of the tavern.

> [W]hat are your findings as to question number one. Did an employee or person under the supervision of either Defendant commit a battery upon the Plaintiff, Kenneth Fay, as to John McNichol, Jr.?
>
> The answer is yes.
>
> ***
>
> As to question number two were any of the Defendants to which you answered yes in question number one, negligent in the supervision of any person who committed the battery on the Plaintiff, Kenneth Kay [sic]. As to Defendant John McNichol, Jr.?
>
> Our answer is yes.
>
> ***
>
> As to question number three, was the negligence of Defendant that you found negligent a factual cause in bringing about harm to the Plaintiff, Kenneth Fay? As to Defendant John McNichol, Jr.?
>
> Our answer is yes.
>
> ***
>
> As to question number four, state the amount of damages sustained by the Plaintiff, Kenneth Fay, as a result of the occurrence?
>
> $300,000.

Ex. P-C (T14, at 119-20).

    5. The debtor/defendant testified during the adversary hearing held in this court that he did not see the plaintiff and was not present when the plaintiff left the tavern at 9:30 p.m. on October 15, 1999. The defendant swore that he was working in the tavern

dining room at that time, while the plaintiff was a customer at the bar.  N.T. at 9:48-49.[5]

6. The defendant's son testified that the plaintiff was abusive to a waitress and was asked to leave the bar section of Pickle's Place around 9:30 p.m.  The son stated that the plaintiff left the tavern voluntarily and was not assaulted or injured.  N.T. at 9:59.

7. The plaintiff, in turn, testified that he first arrived at the tavern on October 15, 1999 at about 10:00 p.m.  He remained in the bar section for some time, but was asked by debtor's son to leave the tavern around 12:00 a.m.  The plaintiff asserted that he had not been abusive to anyone and that the debtor's son offered no explanation for his demanded removal.

8. Before he could comply with the son's request to leave the tavern, the plaintiff swore that he was physically lifted by employees of the tavern, plus the debtor's son, and thrown out the back door leading to the parking lot.  After being thrown to the pavement, he was kicked and punched by these employees and the debtor's son, resulting in various injuries.

9. The plaintiff further testified that the debtor held the tavern door open so that the plaintiff could be forcibly carried out by his son and employees.

10. The plaintiff also swore that the debtor, while holding the open door, witnessed his beating without instructing his employees or son to stop.  N.T. at 10:13.

11. The plaintiff testified that immediately after this beating he spoke to the debtor, who was holding the door open for these employees to return to the tavern, and informed him of his intention to file a complaint with the police.

---

[5]The bar area was separate from the dining room section.  Ex. P-C (T13, at 99-100).

4

12. Immediately thereafter, the plaintiff telephoned the police from a nearby public telephone, and the police sent an officer to interview the plaintiff. After that interview, the policeman went to the tavern while the plaintiff went to a hospital for treatment.

13. Exhibit P-B is a copy of the police report dated October 16, 1999, reflecting the plaintiff's call for help at 12:28 a.m, with the officer arriving to speak to the plaintiff at 12:30 a.m. Ex. P-B, at 3. This report noted that the plaintiff "was bleeding from a swollen area just above his left eye." Id., at 1. The report also stated: "he [the plaintiff] was inside Pickle's Place when he was grabbed a[nd] forcibly removed by two or three men. One [of] those men . . . was 'Pickle.'[6] [Fay] says they took him outside and did [sic] beat him up." Id., at 1.

14. The police report further stated that the police officer, after meeting with the plaintiff, went to the tavern and "spoke to Pickle (John McNichol, Jr.). Police asked him what happened with the guy they threw out and he replied 'after we threw him out, the door closed and I don't know anything that happened.' Police asked him why he was thrown out and learned that the comp. [complainant] had been flagged and asked to leave and he wouldn't." Id., at 1.

15. The police officer, Michael Bongiorno, testified at the state court trial. Ex. P-C (T13, at 133-42). He clarified that the reference in his police report about speaking with John McNichol, Jr. actually referred to the debtor's son, not the debtor. Ex. P-C (T13, at 136-37). In other respects, his state court testimony was consistent with his report.

---

[6]Pickle is the nickname for the debtor's son, John McNichol, III.

5

16. I find the testimony of the plaintiff more credible than that of the debtor and the debtor's son. The timing of the plaintiff's injuries—around midnight—are consistent with his testimony and the information in the police report, which mentioned that the plaintiff was bleeding at 12:30 a.m. The police report also contains the acknowledgment by the debtor's son that the plaintiff was "thrown out" after he refused to leave, contradicting the testimony in this proceeding that the plaintiff left the tavern voluntarily. Moreover, the state court jury did not find the debtor's version of events credible. Ex. P-C.

17. Consistent with the state court jury, I also find credible the plaintiff's testimony that he was beaten by employees of the debtor. Furthermore, I find credible that the debtor was present during this beating and did not act to prevent or stop it. The description of the back door—with a bar on the inside and no direct access from the outside—requires that it be held open to admit persons from the parking lot area. The person holding the door was identified by the plaintiff as the debtor, with whom he spoke briefly.

18. The plaintiff's testimony in this proceeding was also consistent (albeit, in some respects, more detailed) with the testimony he gave at the state court trial. In December 2004, the plaintiff testified that he believed the debtor held the door open to assist the employees who ejected him from the tavern and then observed them beating him. Ex. P-C (T13, at 161, 177).

II.

I make the following legal determinations:

1. The entry of a prepetition judgment against the debtor/defendant precludes the debtor/defendant from challenging the allowance of the plaintiff's claim. See generally In re Long, 2007 WL 4355324 (Bankr. S.D. Tex. 2007).

2. The allowance of the claim is not res judicata as to the non-dischargeability of the debt. See In re Graham 973 F.2d 1089 (3d Cir. 1992).

3. Plaintiff's state-court complaint, seeking liability against the debtor/defendant solely on the theory of negligence, does not preclude the plaintiff from asserting in this court that the debtor's conduct was willful and malicious within the meaning of section 523(a)(6).

4. In order for conduct to fall within the scope of section 523(a)(6), the debtor must act purposefully to cause injury or with substantial certainty to result in injury.

5. The failure to act, when the debtor had a duty to act, can constitute willful and malicious conduct in certain circumstances.

6. The plaintiff has proven by a preponderance of the evidence that he was assaulted by the debtor's son and employees, that the debtor witnessed this assault, that the debtor failed to act in any manner to prevent it, and that the debtor's position at Pickle's Place imposed a state-law duty upon him to prevent it.

7. The plaintiff has proven that his claim is nondischargeable under 11 U.S.C. § 523(a)(6).

III.

Although res judicata (i.e., claim preclusion) stemming from pre-bankruptcy state court litigation does not apply to nondischargeability issues under section 523(c)—viz., section 523(a)(6)—collateral estoppel (i.e., issue preclusion) may apply. See, e.g., In re Graham, 973 F.2d, at 1097. In order for a prior adjudication to act as collateral estoppel in a section 523 determination, the following elements must be proven:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

In re Braen, 900 F.2d 621, 628-29 n.5 (3d Cir. 1990) (quoting In re Ross, 602 F.2d 604, 608 (3d Cir. 1979) (quoting Haize v. Hanover Ins. Co., 536 F.2d 576, 579 (3d Cir. 1976)), cert. denied sub. nom Braen v. Laganella, 498 U.S. 1066 (1991).

Clearly, the validity and amount of the claim raised by the plaintiff against the debtor was the very issue tried before a jury in the Pennsylvania state court system. The debtor defended against this claim by asserting that no assault occurred and that he did not see the plaintiff on October 15, 1999. Ex. P-C (T13, at 97-114). Nevertheless, a $300,000 verdict was rendered and a final judgment entered against him. Thus, the validity and amount of the plaintiff's claim have been established and cannot be challenged in this proceeding.

The plaintiff now seeks a determination that his $300,000 judgment against the debtor is nondischargeable under 11 U.S.C. § 523(a)(6). Section 523(a)(6) of the Bankruptcy Code provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (6) for willful and malicious injury by the debtor to another entity or the property of another entity.

To prevail, the plaintiff must establish the elements of section 523(a)(6) by a preponderance of the evidence. See, e.g., In re Keaty, 397 F.3d 264, 270 (5th Cir. 2005); In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999); see generally Grogan v. Garner, 498 U.S. 279, 291 (1991).

Prior to the enactment of the 1978 Bankruptcy Code, bankruptcy courts found that a nondischargeable injury arose whenever the debtor's conduct was at least reckless and was done without just cause. Tinker v. Colwell, 193 U.S. 473, 487 (1904); see In re Conte, 33 F.3d 303, 306 (3d Cir. 1994) (discussing pre-1978 case law). Courts have concluded, however, relying in part upon the legislative history accompanying the 1978 legislation, that Congress intended that section 523(a)(6) have a higher standard than just recklessness. In re Conte, 33 at 306; H.R. Rep. No. 595, 95th Cong., 2d Sess. 365 (1978) ("'[W]illful' means deliberate or intentional. To the extent that Tinker v. Colwell . . . held that a looser standard is intended, and to the extent that other cases have relied on Tinker to apply a 'reckless disregard' standard, they are overruled.").

Thus, the United States Supreme Court, in Kawaauhau v. Geiger, 523 U.S. 57 (1998), narrowly defined the phrase "willful and malicious" used in section 523(a)(6). The Court construed section 523(a)(6) as limited in scope to intentional torts:

9

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act*," not simply "*the act itself*." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964).

Id. at 61-62 (emphasis in original); see also In re Markowitz, 190 F.3d 455, 464 (6th Cir. 1999).

> Similarly, the Third Circuit Court of Appeals has observed:
>
> [W]hen Congress required more than recklessness for nondischargeability, it required that the debtor have engaged in conduct more culpable than taking a deliberate action that had a high probability of producing harm. . . . Rather, for the injury to have been "willed" by the debtor, it must at least have been substantially certain to result from the debtor's act.

In re Conte, 33 F.3d at 307; see In re Su, 290 F.3d 1140, 1144 (9th Cir. 2002) ("§ 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm was substantially certain.").

Accordingly, "[a]n injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." In re Conte, 33 F.3d at 305. "We hold that actions are willful and malicious within the meaning of § 523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury." Id. at 307; see, e.g., In re Jacobs, 381 B.R. 128, 144-45 (Bankr. E.D. Pa. 2008).

10

Since negligent conduct does not fall within the scope of section 523(a)(6), see, e.g., In re Wagner, 2007 WL 966010, at *6 (E.D. Pa. 2007) ("Supreme Court has stated clearly that reckless or negligent acts will not produce liability under section 523(a)(6).") (citing Kawaauhau v. Geiger, 523 U.S. 57, 63 (1998)); In re Elwood 319 B.R. 371, 372 (E.D. Pa. 2005), the state court judgment against the debtor finding him negligent does not preclude him from asserting that the plaintiff's claim is dischargeable in this chapter 7 banrkuptcy case.

The debtor argues, unpersuasively though, that preclusion arising from the state court judgment now prevents the plaintiff from asserting in this proceeding that his conduct was more than negligent. This argument overlooks, however, that the plaintiff's complaint, Ex. P-A, only raised a claim based upon negligence, and thus the state court jury was not asked to make any findings of intentional, malicious or willful conduct. Since the issue posed in this proceeding was never litigated in state court, issue preclusion (viz., collateral estoppel) cannot apply and claim preclusion does not apply. See generally In re Graham, 973 F.2d at 1098; cf. In re Robinson, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999) ("[A]n award of punitive damages under Ohio law does not necessarily denote that, as a matter of law, the defendant's conduct was "willful" pursuant to the standard required under § 523(a)(6)."). Compare Matter of Greenway, 71 F.3d 1177, 1181 (5th Cir. 1996) ("[State-court] jury's refusal to find that [the debtor] acted with 'actual

conscious indifference' necessarily precludes" a determination under section 523(a)(6), as that issue was actually litigated).[7]

Since only the issue of the debtor's negligence was actually litigated in state court, the plaintiff is not collaterally estopped to present evidence in this adversary proceeding directed to the willfullness and maliciousness of debtor's conduct as it relates to the claim against him.  See Matter of Miller, 156 F.3d 598 (5th Cir. 1998) (prepetition state court jury verdict did not preclude either party from litigating under section 523(a)(6)).

Nor is the debtor's argument persuasive that the plaintiff is judicially estopped from asserting that he acted willfully and maliciously.

> [J]udicial estoppel has three threshold requirements: first, the party in question must have adopted irreconcilably

---

[7]To the extent the collateral estoppel rules of Pennsylvania are relevant, see In re Dawley, 312 B.R. 765, 775 (Bankr. E.D. Pa. 2004), I reach the same conclusion.  Under Pennsylvania law:

> "The doctrine of collateral estoppel, or issue preclusion, applies where the following four prongs are met: (1) an issue of law or fact decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action."

Irizarry v. Office of General Counsel, 934 A.2d 143, 150-51 (Pa. Cmwlt. 2007) (quoting Rue v. K-Mart Corporation, 713 A.2d 82 (Pa. 1998)).  Thus, under state law, for collateral estoppel to apply, "'the inquiry must always be as to the point or question actually litigated or determined in the original action; not what might have been thus litigated and determined.'"  Keystone Bldg. Corp. v. Lincoln Sav. and Loan Ass'n, 468 Pa. 85, 92 n.7 (1976) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352-53 (1876)).  The issue of the debtor's willful or malicious conduct was never placed at issue in the state court litgation.

> inconsistent positions; second, the party must have adopted these positions in "bad faith"; and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient. . . . [Furthermore,] judicial estoppel is an extreme remedy, to be used only when the inconsistent positions are tantamount to a knowing misrepresentation [or even a] fraud on the court.

Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008) (internal quotation marks and citations omitted). Judicial estoppel prevents a party from "'playing fast and loose with the courts' by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding)." In re Teleglobe Communications Corp., 493 F.3d 345, 377 (3d Cir. 2007) (citation omitted).

Plaintiff's decision to proceed in state court solely upon a negligence claim does not judicially estop him from asserting in this adversary proceeding, filed in response to the debtor's subsequent bankruptcy petition, that his injuries were caused by willful and malicious conduct of the debtor. See generally In re Taylor, 72 B.R. 696, 699 (Bankr. E.D. Tenn. 1987). A determination favoring the plaintiff under section 523(a)(6) would not be inconsistent with the state court judgment; nor is there any suggestion that the plaintiff has adopted litigation positions in bad faith.

IV.

As previously noted, the Third Circuit Court of Appeals has stated that the plaintiff seeking a determination that an injury was "willful and malicious" within the meaning of section 523(a)(6) must demonstrate that the debtor purposefully intended

13

injury, or that injury was substantially certain to result from the debtor's conduct. See In re Conte, 33 F.3d at 307. Recently, the Third Circuit held:

> Further, "[l]iabilities arising from assault or assault and battery are generally considered as founded upon a willful and malicious injury and are therefore within the exception." 4 Collier on Bankruptcy ¶ 523.12[4] (15th ed. rev.2007).

In re Granoff, 250 Fed. Appx. 494, 495 (3d Cir. 2007) (non-precedential).

The plaintiff's claim against the debtor is based upon an assault. However, it is undisputed that the debtor did not strike the plaintiff. Nevertheless, the plaintiff contends that the debtor's witnessing of the beating by his son and tavern employees, and his failure to stop them, was either intended to or substantially certain to injure the plaintiff.

While one person's willful and malicious actions generally will not be imputed to another for the purposes of section 523(a)(6), there is no statutory requirement that the debtor be the actor who physically causes the injury. See In re Sintobin, 253 B.R. 826, 830-31 (Bankr. N.D. Ohio 2000). Accordingly, a claim that arises when one willfully and maliciously encourages or assists another person in causing injury is not dischargeable. See id.

Furthermore, "the types of encouragement which may lead to a finding of nondischargeability under § 523(a)(6) can range from overt encouragement to simply an omission, if such an omission was calculated by the debtor in a willful and malicious manner to cause injury." Id., at 830; see also In re Patch, 356 B.R. 450, 457 (B.A.P. 8th Cir. 2006) ("mer[e] fail[ure] to act [in the face of a duty] does not, in and of itself, preclude [the] finding [of] an intentional tort, nor does it render § 523(a)(6) inapplicable"); In re Schachter, 2007 WL 2238293, at *5 (Bankr. S.D.N.Y. 2007) ("[A]n

omission, like an affirmative act, can be the result of intent, and a failure to act may be just as willful and malicious as any affirmative act, *under appropriate circumstances*.") (emphasis in original). As the Sintobin court observed, such an interpretation is "in accordance with generally accepted principles of tort law, which as held by the Supreme Court in Kawaauhau . . . underpin the § 523(a)(6) exception to discharge. In addition, such an interpretation furthers the policy goal of § 523(a)(6) which is to except from a bankruptcy discharge those debts incurred by morally reprehensible conduct." Id.

It is clear that the debtor, in his capacity as co-owner of Pickle's Place, a public tavern, was under a duty to protect its patrons from harm –

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts, § 344 (1965)[8]; see Rosa v. 1220 Uncle's, Inc., 2001 WL 1113016 (Pa. Com. Pl., Phila. Co. 2001) (tavern had a duty to protect its customers from assault); Walsh v. Murphy, 40 Pa. D. & C.3d 98 (Pa. Com. Pl., Bucks Co. 1982) (tavern owner liable for assault upon customer by another patron).

---

[8] In Kawaauhau v. Geiger, 523 U.S. at 61-62, the Court construed section 523(a)(6) with reference to the Restatement (Second) of Torts.

15

In this proceeding, the plaintiff has proven by a preponderance of the evidence that he was assaulted by the son and employees of Pickle's Place, and that the debtor witnessed the beating and made no effort to stop it. He held the door open to assist in the plaintiff's removal from the tavern. He saw the plaintiff thrown to the ground. The debtor then witnessed his son and employees walk over to the plaintiff and kick and punch him.

Instead of fulfilling his duty to a patron by attempting to prevent the assault, the debtor stood idly by and watched it unfold. Given that one of the assailants was the debtor's son and the others employees of his tavern, his direction to stop the attack would likely have been effective. The debtor's failure to intervene while three or four men kicked and punched the plaintiff while he was on the ground was substantially certain to cause the injury that indeed resulted.

Given the debtor's failure to act in a situation where he was under a duty to do so, and given that this failure to act had to have been intended to or substantially certain to injure the plaintiff, the debtor's conduct was "willful and malicious" as Congress defined under section 523(a)(6). The state court debt, which was incurred as the result of debtor's conduct, is thus nondischargeable.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| JOHN McNICHOL | : | |
| Debtor | : | Bankruptcy No. 05-17570bif |
| _____ | | |
| KENNETH FAY | : | |
| Plaintiff | : | |
| v. | : | |
| JOHN McNICHOL | : | |
| Defendant | : | Adversary No. 06-0289 |
| _____ | | |

................................................

ORDER

................................................

AND NOW, this 16th day of May 2008, for the reasons stated in the accompanying memorandum, it is hereby ordered that judgment is entered in favor of the plaintiff and against the defendant, and thus the plaintiff's prepetition claim is nondischargeable under 11 U.S.C. § 523(a)(6).

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Kenneth Fay
412 E. Ridley Avenue
Ridley Park, PA 19078

Jeffrey P. Hoyle, Esq.
214 North Jackson Street
Media, PA 19063

Mr. John McNichol
111 Morton Avenue, Apt 408
Ridley Park, PA 19078

Eugene J. Malady, Esq.
200 East State Street, Suite 309
Media, PA 19063